Ho weed. J.
PLrY.fiff, a merchant in New York, claims, of defendants in New Orleans, the i ahuice of an account, being the difference between *84 the price of a lot of coffee shipped to the latter, and the net proceeds of cotton received by him for their account. The defence is, that the defendants had no dealings with plaintiff, but with one J. H. Pain, their factor here, to whom plaintiff gave credit, and they claim in reconvention the value of the cotton as damages, for disobedience of instructions. Judg-ment was rendered dismissing plaintiff’s demand, and condemning him to pay to defendants the net proceeds of the cotton sold by him, from which he appealed, and defendants have joined in the appeal, claiming a larger sum. *
The first question presented is, to whom did plaintiff give credit in the coffee transaction?
Pain, the intermediary, says that the coffee was sent directly to defendants, but plaintiff charged it to him in his account current. "Witness was, at the same time in open account with defendants, and there was a balance in tlffeir favor. He says: “ Stehn held me responsible for these coffees, from the fact that he charged them in the account current.”
The course of dealing between the parties corroborates this testimony, and shows that plaintiff dealt with and gave credit to Pain, who, on his part, dealt with defendants.
The coffee was ordered, in a letter dated 7th February, 1863, from Pain to plaintiff, to be sent to defendants, accompanied with the statement that the order would be covered by a consignment of sugar or cotton. Prior to that date Pain had made shipments of merchandise to plaintiff for account of parties here, and among them were cotton and molasses for account of defendants, for which plaintiff accounted to Pain, although he knew defendants were the owners here, and when Pain ordered goods from New York for his friends here, they were charged to him and not to, his friends.
On one occasion defendants, having a particular lot of cotton, shipped a part through Pain to plaintiff, for which he accounted to Pain. The other portion was shipped to Havre, and thence reshipped to plaintiff for account, and it is this lot that plaintiff sold, and contends was intended to cover the order for the coffee. We think, however, the defendants did not so intend, as the shipment had been made in the fall of 1862, and a very few days after the order for the coffee was given to Pain, and some time prior to the shipment thereof, they countermanded the order of reshipment from Havre to New York, but not in time, and as soon as they heard it had arrived in New York, they ordered it to be turned over to another party. The inference from the statement in Pain's letter to plaintiff is, that he expected to consign cotton or sugar to cover the order for the coffee, and that he had no reference to defendants’ cotton in Havre, for in the same letter he informed plaintiff that defendants were not satisfied with the sale of the part sold by him.
In questions as to the liability of principal or agent to third persons, the great inquiry must be, to whom was credit knowingly given according to the understanding of the parties, and this is to be determined by the circumstances of the transaction and the conduct of the parties. Story on Agency, No. 288. And where a party, dealing with an agent, with a knowledge of the principal, gives the credit to the agent, he is bound by his choice* Id. No. 291.
*85 Upon the reconventional demand, we think the District Judge did not err.
The witnesses for the defence did not seem to be familiar with1 the true condition of the cotton in question, and they do not give the price of such cotton; while several, on the part of plaintiff, show that it wdS falsely packed, inferior, and brought its full value at the time. There is ho evidence of its value at any other date. Defendants seem, to have been aware of its suspicious condition.
We think substantial justice has been done between the parties, under the evidence in the record.
Judgment affirmed.